### STILLWELL v. THOMPSON (two cases).

(Court of Appeals of District of Columbia. Submitted March 16, 1923. Decided May 7, 1923.)

Nos. 1575, 1576.

1. Patents ⬡➔106(2)—Timely application to amend preliminary statement to preserve rights should be permitted.

The right of a party to amend in a patent case is not different from the similar right accorded by courts in proceedings at law and in equity, and where a party, acting timely and in good faith, shows that amendment is essential to the preservation of his rights, the privilege should be accorded, and this may be done at any step in the proceedings prior to the final determination of the case in the Patent Office.

2. Patents ⬡➔106(2)—Prior party under original statements held entitled to amend after other party amended.

Where the preliminary statements showed that one party had made disclosure on or before a date which was four days earlier than the date of disclosure claimed by the other party, and the latter party was permitted

⬡➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to amend his statement to show an earlier date, on proof that he had subsequently found proof establishing an earlier date, the party having priority under the original preliminary statements was likewise entitled to amend, on proof, which was stronger than his adversary's, that he, too, had discovered evidence establishing an earlier date.

Smyth, Chief Justice, dissenting.

Appeal from the Commissioner of Patents.

Two interference proceedings between Howard A. Stillwell and Uldric Thompson, Jr. From decisions awarding priority in each case to Thompson, Stillwell appeals. Reversed.

Edwin J. Prindle, of New York City, for appellant.

Thomas Howe, of New York City, for appellee.

Before SMYTH, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. The two interferences can be treated as a single case. The single claim in issue in No. 1576 reads as follows:

"The method of forming a cavity in explosive contained in a shell which consists in supporting the shell with its axis having a vertical component, whereby explosive released tends to drop away from the shell, and having its lower end open, and removing explosive material to form the desired cavity by relatively moving the shell and drills, or cutters of different diameters and in longitudinally fixed relationship, whereby the said drills or cutters enter into the explosive from the lower, open end of the shell along a path having a vertical component and the boring of large diameter is carried out simultaneously with a portion of the boring of smaller diameter."

Five more specific claims to the same method are involved in No. 1575. Claims 1 and 5 illustrate the invention in issue as follows:

"1. The method of forming a cavity in explosive material contained in a shell having directly communicating bores of different diameters, which consists in boring out the explosives contained in the bore of larger diameter, on a diameter not greater than the diameter of the lesser bore."

"5. The method of forming a cavity in explosive cast in a shell having bores of different diameters, which consists in advancing boring cutters or drills in fixed longitudinal relationship into the said explosive, the said cutters or drills being of different diameters to form holes of different diameters in the different bores respectively, the hole of larger diameter in the larger shell bore being not greater than the lesser bore."

From the claims it will be observed that the invention involves a method of boring out a portion of the explosive material cast in a shell to form a cavity to receive the detonator, which upon impact explodes the shell.

A patent was issued to the senior party Thompson, February 5, 1918, upon a division of an application filed November 20, 1916. Stillwell filed his application July 24, 1916.

Stillwell in his preliminary statement alleged conception and disclosure on or before September 11, 1915, and reduction to practice October 30, 1915. Thompson in his preliminary statement fixed a date of conception on September 7, 1915, disclosure September 15, 1915, and reduction to practice November 1, 1915.

Since Thompson on the face of his preliminary statement could claim no earlier date than his alleged date of disclosure, it will be observed

that Stillwell is prior both as to date of conception and reduction to practice. Thompson on motion was allowed by the Examiner to amend his preliminary statement, fixing the date of conception and disclosure at August 27, 1915. During the taking of the testimony Stillwell moved to be allowed to amend his preliminary statement. The motion was denied by the Examiner, who awarded priority to Thompson. On appeal the Board of Examiners in Chief allowed Stillwell's motion to amend and awarded him priority, fixing his date of conception and disclosure as early as August 25, 1915, and reduction to practice on October 30, 1915.

The Commissioner denied the right of Stillwell to amend and reversed the Examiners in Chief. From the decisions these appeals were taken.

[1] The right of a party to amend in a patent case is not different from the similar right accorded by courts in proceedings at law and in equity. Where a party, acting timely and in good faith, shows that amendment is essential to the preservation of his rights, the privilege should be accorded, and this may be done at any step in the proceedings prior to the final determination of the case in the Patent Office. If both parties were restricted to the dates given in their preliminary statements, Stillwell would prevail. The tribunals below all agree that there is no evidence of intentional misstatement on the part of either of the parties or their witnesses. The whole case, therefore, turns upon the right of Stillwell to amend after a similar privilege had been accorded Thompson.

Thompson's right to amend, and indeed his case, turns on a late-discovered sketch in the possession of his principal witness, Smith. It appears that on September 7, 1915, Thompson went to Parlin, N. J., in the employ of the International Steel & Ordnance Company. He was there, as he states, for the first time confronted by the problem of boring shells. Conferences were held between Thompson and the officers of the company. As a result Thompson devised the invention in issue. Smith had been associated with Thompson before going to Parlin and was his chief assistant there in the course of developing the invention. When Thompson prepared his original preliminary statement, Smith was with the American army in France.

After Thompson discovered, from the preliminary statements, that Stillwell was prior in point of time, he wrote Smith in part as follows:

"September 4, 1918.

"Capt. St. Clair Smith, 58th Artillery, C. A. C., A. E. F. My Dear Sainty:—It is highly important that a date of conception of the boring machine be substantiated. I went to Parlin September 7, 1915, and, after reading the Russian specifications, immediately began to mentally design machinery for the new work. I remember that at that time I concentrated on machinery to form the cavities and have sketches of several types of casting plugs. I also remember planning to use an inverted drill press of some sort, adopted with a shell holder, and wonder if I did not roughly outline my purposes to you in our many conversations.

"Can you recall of my telling you my plans, and would you be willing to say that I had divulged the general scheme within three days after taking up my duties at Parlin? If you can, and will write me to this effect, it will be a great help. Please do not delay a reply. * * *

"Sincerely,                              [Signed] Uldric Thompson, Jr."

Smith returned Thompson's letter, answering in long-hand on the back thereof in part as follows:

"Dear Tommy: Please don't think me discourteous in replying on the back of your letter, but paper up front is a very scarce article.

"Yes, I remember very clearly your efforts to dope out a drill almost the very day you arrived on the scene, and further you made some sketches. The drill question was taken up by you the very moment you arrived, and if you will remember that while we were designing the crimping machine you and I discussed the kind of machinery necessary to drill the fuse seat in the charge. * * *

"As always,                                         St. Clair Smith."

Smith testified that after he returned to this country he discovered among his papers a pencil sketch, dated August 27, 1915, outlining the Thompson device. On the strength of this sketch Thompson amended. The testimony discloses that, at the conferences at Parlin, Thompson disclosed his sketches made from time to time as the work developed. All these sketches were signed. The pencil sketch discovered by Smith, however, discloses no signature. The tribunals below all accorded Thompson the date of this drawing, August 27, 1915, as a date of conception and disclosure. Without further review of Thompson's case, we may say that on our view of the case the finding of the tribunals below may stand unimpeached, without affecting the result.

[2] Coming to Stillwell's right to amend, it appears that he returned to New York from his annual vacation August 15, 1915, and on the following day he was informed that he was wanted at the Engineering Department of the Du Pont Powder Company at Wilmington, Del. He went there, and in company with one Woodbury developed the invention in issue. The original preliminary statements were filed three years later, and it would not be surprising if both parties may have been uncertain as to exact dates. It was not until Stillwell's attorney made an investigation and search of the files of the Du Pont Powder Works that evidence of earlier dates than those appearing in the preliminary statement was discovered. From a letter it was ascertained that Stillwell proceeded to Wilmington immediately. The letter dated August 16, 1915, from the Chief Engineer, is as follows:

"We are returning herewith original blueprint of shell which we obtained from you through the Chemical Department. We also attach two photostatic prints of the shell, and one photostatic print to the Chemical Department's copy of this letter.

"Mr. Stillwell will confer with Mr. Woodbury within the next few days in regard to the details of this installation, and he will please turn over to him the two photostatic prints attached hereto.

"Mr. Stillwell was in this office to-day, and it was agreed that he would take this matter up Wednesday the 18th inst., go over the proposition in detail with Mr. Woodbury, and make some preliminary sketches and designs of the apparatus and layout desired, submitting same to us as soon as possible. There will be some experimental work required, and we suppose Mr. Woodbury will give Mr. Stillwell the benefit of the experiments which he has so far carried on and assist him in any further work necessary."

At the time the original preliminary statement was prepared, Stillwell and Woodbury had before them a letter of September 11, 1915, written by Woodbury to the Chemical Department of the Du Pont

Company, which, among other things, contained the following statement:

"We have already talked with Mr. Stillwell regarding the drilling operation, and he is preparing to set up a drill press here at the laboratory in order to try out both the drilling and boring."

This, it appears, accounted for the date of conception and disclosure fixed in the original preliminary statement as "on or before September 11, 1915." It appears, from the affidavits in support of the motion to amend, that when Stillwell and Woodbury, after a search had been made by Stillwell's attorney, were confronted with the letter of August 16th, they clearly recalled from the data before them the conferences appointed for August 18th, and that within two days, or not more than a week, August 25th thereafter, Stillwell had a second conference with Woodbury, when he disclosed sketches of the invention and explained its operation.

We deem it unnecessary to further review the evidence in this case, since it has been analyzed in great detail both by the Examiner and the Board of Examiners in Chief. As suggested, if both parties were restricted to the dates given in their original preliminary statements, Stillwell would prevail. Our examination of the record convinces us that, if either party is to be permitted to amend his preliminary statement, the right should be accorded both. Indeed, Stillwell's position in this regard is stronger and more consistent than Thompson's. We are in full accord with the reasoning and able analysis of the case, as given in the opinion of the Board of Examiners in Chief.

The decisions of the Commissioner are, therefore, reversed.

SMYTH, Chief Justice, dissents.